Good morning, Your Honor. Bo Sterling on behalf of the appellant, Mr. Rodriguez. Would you mind moving your mic up just a little bit so we can... Is that better, Your Honor? Yes, thank you. All right. Before you start, we received a notice of change in custody status of your client. Does that affect this case, or how does that affect this case, if at all? I don't think it affects the case. I'm not sure what relief Mr. Aparicio ultimately will get if the court reverses, but he certainly still has an interest in having those two convictions reversed. I just don't want to take up much time, but I did try to contact him at his place of confinement, but I wasn't able to do so, just to see if he might want to, with the government's invitation, to see if he might want to dismiss the case. Well, what collateral consequences do you rely on for us to conclude that this appeal isn't moot? Honestly, Your Honor, I haven't looked too far into it. All right. I mean, I'd be happy to address that in some supplemental briefing, but I'm sure that... If it becomes an issue, we'll give you that opportunity. Thank you, Your Honor. Your Honor, I'm going to fucking kill you. I'm going to kill you and your family, and if I don't, somebody else will, motherfucker. I apologize, Your Honor, but those, of course, are the words that... Came from your client, not from you. My client has alleged to have said. And as attorneys and as judges, we tend to be dispassionate and blasé about those sorts of things, but the issue here, to be clear, is what effect those kind of statements are going to have on jurors in a case such as this. And, of course, Mr. Rodriguez wasn't being charged with making any threats. He was being charged with possession of a firearm. And the government says that those statements, which were allegedly made to the arresting police officer, are relevant to proving consciousness of guilt. And I'm not going to dispute that they have some relevance for that purpose. And I'm also not going to dispute that Judge Proe gave this issue considerable consideration during the motion in limine hearing in coming up with what he thought were adequate cautionary or limiting instructions. But I would suggest to this Court that those sort of statements are highly prejudicial, and it's hard to think of examples of testimony that has more of a tendency to encourage the jury and suggest to the jury that they reach a decision on improper grounds, on emotional grounds, than statements of that nature. And that's the basis of our argument for why we should have a new trial in this case. Well, Judge Proe did give a limiting instruction, too. Why do you think that wasn't sufficient? It's one of those considerations, Your Honor, where the Court is just going to have to look at it and decide is that likely to have been enough. Judge Proe went out of his way. I think there were maybe three or four different instructions that touched on the limitations that could be placed on that kind of evidence. I just don't think it's enough to persuade an average juror, a typical juror, not to take that into consideration. I just don't think those kind of things could be set aside, those kind of statements made to a lawful authority figure. But those are, I guess, because you concede relevance, then we're just down to weighing the probative value versus the prejudicial effect on appeal. That's pretty tough for us to go back and say that the trial judge erred in making that evidentiary decision. That's certainly true, Your Honor. Mr. Rodriguez has an enormously high hurdle here. But in doing that weighing, and I'm not asking the Court to re-weigh it, but just to understand what was in the balance here, we certainly understand the prejudice. And even Judge Proe, pages 67, 72 of the excerpt, I think it is, he actually acknowledges in effect the prejudicial nature of these statements. But let's look at what they're actually relevant to. The Court, the government says consciousness of guilt. And consciousness of guilt can help the jury decide particularly an issue where there's conflicting evidence, as there was in this case. But the evidence itself is ambiguous. It tends to support the defense argument just as much as the government's argument. Mr. Rodriguez denied ever possessing the gun. In effect, his theory of the case was that the police planted the gun on him. So under those circumstances, expressing anger towards the police during the arrest, when they're, in his theory, planting the gun on him, is entirely consistent with his statements and don't necessarily show a consciousness of guilt. They demonstrate his anger and frustration at the unjust situation. I just bring that up, Your Honor, so that we understand the weakness of the evidence that the government, you know, the purpose of the government is asserting here. And even in their argument that this evidence is harmless, they're in essence acknowledging that there's evidence, other evidence in the record. This isn't that important. Any further questions? I think we have your argument in hand. Thank you, Your Honor. I'll reserve the rest of my time. Yeah. Good morning, Your Honors. May it please the Court, Camille Dam for the United States. Would you move the mic just a little closer to you, too, as well? Thank you. Is that better? Yes. I didn't want to rustle my paper. I get it. In fact, it's the government's view that this case illustrates a proper exercise of discretion. Judge Proulx had the benefit of being informed by briefing, by hearing, has been acknowledged, took consideration carefully. And in ruling on the motion in limine that he had before him, he actually excluded some evidence and said that these threat evidence could come in, requested proffers for cautionary instructions, which he did give and has been referenced. He gave cautionary instruction mid-trial. And in his final charge, there were four different times that could have referenced to the jury that the defendant was not on trial for anything for which he was not charged, that the jury must take the cautionary instruction and abide by it, and the proper uses of the evidence. What is the closest existing Ninth Circuit case that would justify, that would be cited if we were just simply to dispose of the, say, existing Ninth Circuit authority? It's, you know, gives it the discretion standard, no problem. Well, the Ortiz-Sandoval case, while it's not on point factually and candidly, I didn't find a case that squared on the facts. In all points, all of these cases are so different. But Ortiz-Sandoval says Federal case law is uniform in holding that threats are relevant to consciousness of guilt. And threat, threat evidence. Threat against the arresting officer? Or witnesses. Or witnesses, yes. But arresting officers. Or was the primary witness. Pardon? Was the primary witness, or an important witness, definitely. Well, I guess, but I don't think there's been a case, I haven't seen a case, and maybe I'm wrong on this, where the threat during arrest against the arresting officer has been deemed to be this kind of a fall within this rule. I mean, I see, I understand, and I understand the case law about witnesses. But why should impulsive remarks made on arrest fall into that category? Your Honor, in this case, it did demonstrate consciousness of guilt, and it showed a hope that police officers' testimony or actions could be influenced as much as any other witness. At this point, the defendant had not been formally arrested. He hadn't been put back in the car. It was relevant also because, as Officer Goodrich testified, the threat came right at the point, as they were walking back, that they were at the point where they passed the firearm that had been tossed aside. And it was then that he made that threat, relating it to his guilt of possessing that firearm. And it did show his consciousness of guilt, and it did show. Go ahead. Just refresh me on the counsel quoted with what he said. What did he say that tied it to the gun? I'm just saying the location and time of when the threat was made tied into the weapon, because it was as they were passing by the tossed weapon that the threat was made. It's a minor point. Well, and the problem is, as Judge Thomas talked about, the emotions and the anger that arise in an arrest situation. You say, well, you know, the police officers are witnesses. Yeah, but they aren't just any witnesses. You know, got the weight of the law enforcement image behind his testimony. And so that means that's why I'm asking about the precedent. If this case stands for the proposition that outbursts during a highly charged confrontation between an officer and an arrestee become proof of the underlying offense, that really opens the door to some, you know, perhaps very troubling situations, because I don't know where this arrest took place. Well, respectfully, Your Honor, I don't think the facts in this case support that broad of a precedent as Your Honor has stated it. It took place in a gated neighborhood, and the police officer, it was in the middle of the night, the police officer was walking the defendant, had him by the elbow, he was handcuffed and was walking him back to where the police car was parked. It wasn't at that point highly charged. He was quietly talking to him. Some time had passed while he had handcuffed the defendant and was quietly walking him back. And the officer testified that the threat was not made, well, he didn't testify that the threat was not made in the heat of passion, but what he said was the threat was made calmly. He spoke it to me softly, almost a whisper. Well, yeah, but there's, I guess the question is, and what I'm struggling with a bit, too, is it seems to me there's a difference between a threat made against a witness after the defendant has been charged, which involves some degree of thought, some degree of communication, and statements that are made during an arrest to the officer who may, I mean, I take your point that an officer is likely a witness, but that's not, it involves a little more thought on the part of the defendant to conclude that I'm trying to intimidate a witness and therefore it shows consciousness of guilt. I mean, a lot of swearing during arrests, you know that. I mean, it just happens all the time. And I'm not sure analytically that it means that shows consciousness of guilt. I'm just saying, I haven't reached a conclusion one way or the other, but I'm struggling a bit to find a rationale for saying the witness rule should apply to officers who are arresting who end up being witnesses. Well, let me try this. Is it easier under the spoliation theory where the only purpose the defendant has is an intimidating one and intimidation of witnesses has been classified as proper evidence of spoliation and therefore consciousness of guilt? Well, sure, but here he's handcuffed. I mean, he's being taken by the car. It's not, you know, he's hardly a credible threat at that point for the officer, I think. But it is, as counsel said, there's no question about it. I hear those, a jury hears that and they're going to conclude he's a violent bad guy that needs to be put away. Well, in this day of TV, movies, et cetera, I disagree that the threat was that inflammatory. It is certainly prejudicial, and Judge Pro recognized that. But it was not unfairly prejudicial. It did not induce the jury, and I think in the light of all the evidence, to reach a verdict on an improper basis. And to the extent that the court is uncomfortable with that or disagrees with that, cautionary instructions are generally a cure to any unfair prejudice, and Judge Pro carefully designed and gave multiple cautionary instructions in this case. Right. I take that part of your argument. I understand that. And Judge Pro, once he decides he's going to admit it, did issue cautionary instructions. I guess I'm concerned that the district court may have thought, well, the witness rule applies here, and therefore it's relevant, and therefore then we get into balancing. I guess I'm getting back to the predicate question was, is this a proper application of rule or not? Candidly, Your Honor, I did not find a case where an arresting officer received a threat, nor did I find a case that was reversed based on a threat. To that extent, it may extend into new. Was the officer a witness here? Yes. He was the primary witness. This officer saw the defendant run. He saw him hop over the wall into the gated community. He chased him. He found a round in his hand. He found 11 rounds in the defendant's pocket. He saw the defendant, literally saw him reach into his waist and toss the gun, came back after he was apprehended and was walking back with him when the defendant made these statements. But, yes, he was the first. Well, there's no doubt he was going to be a witness, but it's a little bit different from having a witness in the cold light of day sometime later that gets him trying to intimidate from testifying. I mean, I don't see how the spoliation theory quite applies to an arresting officer where you've got a suspect in handcuffs and other officers around. There was really no likelihood that he was going to intimidate the officer from testifying. The jury didn't hear this, but it's in the record in terms of the intimidation value. This defendant was a member of a gang, MS-13, that is renowned for retaliation against witnesses. That may bear on it to some extent. Okay. I think we've explored the issue.  Thanks for your argument. Thank you. Judge Acuda, they came in during the arresting officer's testimony, also during the companion officer. It was brought up during opening statements and in closing arguments repeatedly. With regard to the cases that are cited by the government, I mean, I've read all those cases. I did independent research. I didn't find any case that was on point. All the cases dealing with threats were cases where the threats dealt with witnesses who were going to testify or whether the threats in the spoliation argument was otherwise directly relevant. I guess I should back up a little bit when I'm conceding that the evidence is relevant. I'm saying that relevance is very easy to prove, not on the spoliation, which I hardly deal with, but on the consciousness of guilt. It's such a small little thing, I suppose it could be theoretically relevant, but I don't think it's relevant in this context to the point where we'd ever overcome the prejudice that comes from these kind of statements, and I would certainly welcome the court to adopt a rule where these kind of statements are categorically wrong. Well, what do you make of the government's argument that this case might differ from any other because the statements were made as the defendant was led past the point where the gun was found? I don't see how that makes any difference, Your Honor. I mean, the threats are the threats. In other words, the idea is that that shows consciousness of guilt because that's where the evidence was found. I guess, but Your Honor, I don't mean to be dismissive, but the defendant denies that he even had the gun, so where it comes in in that equation is really not the significant point. It's the fact that these threats are made and how they're going to play out with the jury. Well, right, but I think the government's argument would be, look, he made the threat where he allegedly tossed the gun. If he hadn't known where the gun was tossed, that was an expression of, I mean, he saw where the gun was tossed, that's an expression of guilt. His defense was he didn't toss anything, so. Oh, you know, I didn't get that from the record, Your Honor, when I was reading through it, that it was really tied to walking by the gun, and I don't recall that being the nature of the testimony at the trial. Okay, we can take a look at the record. I hadn't, that point had not occurred to me until, yeah. I'm sorry, it wasn't such a fine point. And, Judge Fischer, I mean, you bring up, you touch on some important points, I think, in this case that maybe we should talk about a little bit, which is the immense power of the government and particular law enforcement figures when they testify. I mean, let's just imagine for a second that my client is telling the truth here. Look at what power the government has to just take the stand and lie and pretty much get a conviction wherever they want just by bringing statements like this into the case. I don't think we should be speculating about the government witness lying, unless there's some evidence in this case. I don't see that that's necessary. Well, with all due respect, Your Honor, the evidence in this case is my client's testimony. He said he never had the gun, and he denied making the statements. Very good. Any further questions? Thank you both for your arguments. It's an interesting question. Thank you. And the case will be submitted for dissent.
judges: Thomas, Fisher, Ikuta